*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

THOMAS ADRIAN DRURY,

Defendant-Appellant.

UNPUBLISHED
June 11, 2025
11:32 AM

No. 368495
Oakland Circuit Court
LC No. 2021-278145-FC

Before: K. F. KELLY, P.J., and O'BRIEN and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a) (victim under 13); MCL 750.520b(2)(b), and one count of second-degree criminal sexual conduct, MCL 750.520c(1)(a); MCL 750.520c(2)(b). We affirm.

## I. FACTS

Defendant is the uncle of the complainant, who was six-years old at the time of the assault. According to the testimony given at defendant's trial in September 2023, the complainant's mother left the complainant in the care of her sister and defendant while the mother went to work on April 29, 2021. The complainant's aunt went to an appointment, leaving defendant alone to care for the complainant, at which time the sexual abuse occurred. When the complainant's mother picked the complainant up later in the day, the complainant disclosed that defendant sexually touched and penetrated her. The complainant's mother contacted the police, and the complainant completed a sexual assault examination and a forensic interview. DNA testing detected defendant's DNA on the complainant's genitalia.

Defendant testified on his own behalf at trial. He denied sexual activity with the victim. Regarding his interview with Detective Janeen Laity, he agreed that he told her "if something did happen, [he] genuinely [did not] remember." He testified that he does remember now, and nothing happened, although he acknowledged that these statements conflict. He also admitted to telling Detective Laity that it was possible he touched the victim, but did not remember. He testified that he told Detective Laity that if the DNA established that he had "done something," then he had

"done something." Moreover, defendant admitted to having sexual thoughts about the victim, including thoughts about touching the victim's vagina.

The jury convicted defendant as stated above. This appeal followed.

## II. INSUFFICIENT EVIDENCE

First, defendant argues that the evidence was insufficient to support that he penetrated the complainant beyond a reasonable doubt. We disagree.

This Court reviews de novo a challenge to the sufficiency of the evidence. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010).

Due process[1] requires every element of a crime be proved beyond a reasonable doubt in order to sustain a criminal conviction. *People v Hampton*, 407 Mich 354, 366; 285 NW2d 284 (1979), citing *In re Winship*, 397 US 358, 364; 90 S Ct 1068; 25 L Ed 2d 368 (1970). When reviewing a challenge to the sufficiency of the evidence, the evidence is viewed in the light most favorable to the prosecution, and this Court must consider whether, based on that evidence, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *People v Smith-Anthony*, 494 Mich 669, 676; 837 NW2d 415 (2013). Direct and circumstantial evidence, as well as all reasonable inferences that may be drawn from that evidence, are considered to determine whether the evidence was sufficient to sustain the defendant's conviction. *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002).

Under MCL 750.520b(1)(a), "[a] person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person" when "[t]hat other person is under 13 years of age." Defendant argues that there was insufficient evidence that he sexually penetrated the complainant because the complainant's testimony that defendant "peed in my private" and "peed in my vulva" was insufficient to establish penetration.

Penetration is more than mere contact. *People v Payne*, 90 Mich App 713, 722; 282 NW2d 456 (1979). MCL 750.520a(r) defines sexual penetration as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required." In this case, the complainant testified that defendant "peed in [her] private" and touched her "vulva" while she was in his bedroom on a specific date. The complainant elaborated that her "private" was her "vulva" from which she urinated, and that defendant used his "vulva," from which he urinated, to "pee" in her vulva, and also used his hand to touch her vulva. The complainant's mother explained that the complainant had, earlier in her life, called her vaginal area a "tutu," in response to which a relative taught her to call it her vulva.

Even though the complainant, who was eight years old at trial, did not use the proper nomenclature to describe anatomy, the evidence and reasonable inferences from it indicated that defendant sexually penetrated her genital opening. The complainant described defendant's actions

---

[1] See US Const, Am XIV, § 1; Const 1963, art 1, § 17.

-2-

as peeing *in* her "vulva," and stated that defendant used the part of his anatomy from which he urinated for activity in her "privates."

Further, the complainant was consistent in her reports of defendant's actions. She told her mother on the night of the incident that defendant took her pants off and "peed in her vulva," then reported to an examining nurse, "He peed in my vulva and he touches my private spot a lot." The jury was able to consider the testimony of each of the witnesses, including defendant, and decide what it found credible, including whether the testimony described acts of penetration. An appellate court "does not interfere" with the fact-finder's "assessment of the weight and credibility of witnesses or the evidence." *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). " '[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict.' " *People v Gonzalez*, 468 Mich 636, 640-641; 664 NW2d 159 (2003), quoting *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000).

Significantly, the forensic evidence also indicated that defendant had sexually penetrated the complainant. An expert in DNA analysis, Amanda Fazi, testified that samples from the complainant's "inner" and "outer genitalia swabs" both were positive for the DNA of a male contributor, and that DNA analysis revealed "very strong support" that the swabs contained defendant's DNA. Regarding the "inner genitalia swabs," Fazi reported that it was "approximately 688 quintillion times more likely" that the DNA originated from the complainant and defendant than from "the complainant, and an unrelated unknown individual." In order to obtain a swab of the inner genitalia, Fazi had to "go inside" the genital opening by moving aside the labia majora. That defendant's DNA was located within the complainant's genitalia was objective clinical evidence that defendant had sexually penetrated the complainant.

For these reasons, we are satisfied that the evidence, including reasonable inferences drawn from it, was sufficient to establish beyond a reasonable doubt that defendant sexually penetrated the complainant's genital opening.

## III. EVIDENCE FROM THE SEXUAL ASSAULT NURSE EXAMINER

Defendant argues that he was denied a fair and impartial trial due to the testimony of the sexual assault nurse examiner (SANE), Katrina Ferris, which included inadmissible hearsay and improper vouching. We disagree.

Defendant did not object to Ferris's testimony at trial, therefore these issues are unpreserved. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To establish plain error affecting substantial rights, a defendant must show that (1) an error occurred, (2) the error was obvious, and (3) the error prejudiced the defendant, meaning that the error "affected the outcome of the lower court proceedings." *Id*. Reversal is warranted only if plain error resulted in the conviction of an innocent defendant, or if "the error seriously affected the fairness, integrity, or public reputation of judicial proceedings independent of the defendant's innocence." *Id*.

### A. HEARSAY

"Generally, all relevant evidence is admissible at trial." *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). See also MRE 402. However, hearsay—meaning unsworn, out-

of-court statements offered to establish the truth of the matters asserted, MRE 801(c); *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007)—is generally not admissible unless it meets the requirements of a hearsay exception in the rules of evidence, MRE 802; *Stamper*, 480 Mich at 3.

Defendant objects to a statement by Ferris, who examined the complainant the day after the incident. Ferris testified that, while telling Ferris why she required an examination, the complainant stated, "He peed in my vulva" as a part of her description of defendant's behavior. Defendant asserts that this statement to Ferris was inadmissible because the complainant's mother testified that the complainant made a similar statement to her, and only one such statement is admissible under MRE 803(A), the "tender years" hearsay exception. MRE 803A applies to "[a] statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice . . . to the extent that it corroborates testimony given by the declarant during the same proceeding," and—crucial to defendant's argument—provides that "[i]f the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule." Relying on this latter portion of the exception, defendant contends that the complainant's mother's testimony regarding the complainant's statement rendered inadmissible Ferris's testimony about a similar statement made by complainant.

However, the statements at issue also came under the hearsay exception for statements made for the purpose of medical treatment and diagnosis. MRE 803(4). The rationale behind MRE 803(4) is that a person seeking medical treatment is motivated to speak truthfully about the matters on which medical treatment depends. *People v Kosters*, 175 Mich App 748, 764; 438 NW2d 651 (1989). "Under MRE 803(4), the declarant must have the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and the statement must be reasonably necessary to the diagnosis and treatment of the patient." *People v McElhaney*, 215 Mich App 269, 280; 545 NW2d 18 (1996).

In this case, defendant does not argue that Ferris's retelling of the complainant's statements to her was inadmissible under MRE 803(4). It is readily apparent that the complainant's statement to the SANE was for medical purposes, because the examination took place the day after the assault and included taking pertinent history from the complainant before conducting the actual detailed physical examination. Ferris explained that taking an examinee's history guided her examination regarding the critical elements to consider, impacted what medications might be recommended, and informed the practitioner of relevant allergies. An examiner's having taken a complete history from a complainant, including a "recitation of the totality of the circumstances of the assault," are properly admitted under MRE 803(4), "particularly in sexual assault cases, in which injuries might be 'latent' or 'psychological' in nature." *People v Johnson*, 493 Mich 922, 923; 824 NW2d 168 (2013), citing *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

For these reasons, defendant has not brought to light an evidentiary error, let alone one that denied him a fair trial, by way of the SANE's testimony stating what the complainant reported to her.

## B. VOUCHING

Defendant argues that Ferris improperly vouched for the complainant's credibility when she responded as follows to the prosecuting attorney's question about what the complainant told Ferris when Ferris asked the complainant why she was present for an examination:

> She stated, "Yes, it's [be]cause [defendant] didn't do the right thing. He peed in my vulva and he touches my private spot a lot. I was really nervous about coming here but I am so brave. I told you and I didn't even need mom's hand to do it."

Because credibility matters are determined by the jury, it is generally improper for a witness to provide an opinion on the credibility of another witness. *People v Douglas*, 496 Mich 557, 583; 852 NW2d 587 (2014). An expert witness may testify about the general behavior of sexual abuse victims "for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim or to rebut an attack on the victim's credibility." *People v Peterson,* 450 Mich 349, 373; 537 NW2d 857 (1995). However, an expert may not vouch for the veracity of a victim. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). An expert may therefore not testify that a specific victim's allegations are truthful or that abuse in fact occurred. *People v Garrison (On Remand)*, 187 Mich App 657, 658; 468 NW2d 321 (1991).

In this case, defendant argues that Ferris's testimony "had the effect of portraying the child as being brave and truthful in the face of trepidation." However, Ferris did not provide an opinion on the veracity of the complainant's allegations. Ferris expressly stated on the record that she relayed the victim's statement "word-for-word." Ferris did not state whether she thought the complainant was truthful and she never described the complainant as brave. Ferris interviewed the complainant to collect patient history, as is standard protocol. The prosecuting attorney did not ask Ferris to apply her expert knowledge of the effects of trauma on child victims' disclosures to her interview of the complainant. The prosecutor simply asked what the complainant reported when Ferris asked her why she was present for an examination, and Ferris quoted the complainant's response to her question. Defendant in fact acknowledges that Ferris's testimony was "not an explicit comment on the truthfulness of the child." Because Ferris did not comment on the veracity of the complainant's comments or allegations, defendant has not established that any improper vouching took place.

## IV. PROSECUTORIAL ERROR

Defendant argues that the prosecuting attorney's closing argument included improper commentary that encouraged the jury to view the complainant sympathetically, which denied him a fair trial.

The prosecutor has a duty to ensure that a defendant receives a fair trial. *People v Farrar*, 36 Mich App 294, 299; 193 NW2d 363 (1971). The responsibility of a prosecutor is "to seek justice, rather than merely to convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "The test of prosecutorial misconduct is whether a defendant was denied a fair and

impartial trial." *Id*. A fair trial "can be jeopardized when the prosecutor interjects issues broader than the guilt or innocence of the accused." *Id*. at 63-64.

In this case, defendant takes exception to the following remark: "Yes, it's because [defendant] didn't do the right thing. He peed in my vulva and he touches my private spot a lot. I was really nervous about coming here but I am so brave. I told you and I didn't even need mama's hand to do it." As noted, this remark was a quotation of what Ferris testified that the complainant told her when asked if the complainant knew why the examination was taking place. Defendant argues that this comment unfairly encouraged the jurors to view the complainant with sympathy.

A defendant "has a right to a fair and impartial jury" with jurors who deliberate about only the "evidence that is presented to them in open court." *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). The right to a fair trial requires that a guilty verdict be based on the evidence, and "not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *People v Banks*, 249 Mich App 247, 256; 642 NW2d 351 (2002). Accordingly, a prosecuting attorney may not appeal to the jury to sympathize with the victim. *People v Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984).

However, prosecutorial comments must be read as a whole and evaluated in context, including the arguments of the defense and the relationship they bear to the evidence. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004). In this case, the prosecuting attorney used the word "brave" not as his own characterization of the complaining witness, but instead was quoting Ferris's proper testimony about how the complainant described herself while offering sensitive information to Ferris. The prosecuting attorney offered that quotation while summarizing the "medical evidence," without himself endorsing or otherwise commenting on the statement. After repeating the quotation in question, the prosecuting attorney stated, "So based on that information she did her examination. And that corroborates what [the complainant] told you here. That corroborates what ultimately the DNA evidence shows," then went on the discuss the DNA evidence. The challenged remarks were therefore an accurate summary of the evidence attendant to proper argument that the evidence supported a guilty verdict. Prosecutors have "great latitude regarding their arguments" in closing, and are "generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008).

An improper prosecutorial comment is one that unfairly introduces an issue that "encourages jurors not to make reasoned judgments." *People v Abraham*, 256 Mich App 265, 278-279; 662 NW2d 836 (2003). In this case, because the challenged prosecutorial argument did not imply that the jury should consider the complainant's bravery as a factor in considering the evidence, there was no impropriety.

## V. INEFFECTIVE ASSISTANCE

Finally, defendant argues that his trial counsel provided ineffective assistance by not objecting during trial to the testimony and commentary at issue on appeal. We disagree.

The constitutional question whether an attorney provided ineffective assistance is reviewed de novo. *Unger*, 278 Mich App at 253. However, appellate review of unpreserved claims of ineffective assistance of counsel is limited to errors apparent on the existing record. *Id.*

A criminal defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007) (quotation marks omitted). In order to prevail on a claim of ineffective assistance, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). A defense attorney's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been different." *Id.*

In this case, defendant argues that his trial attorney's performance was deficient by failing to object to the SANE's testimony that recounted the complainant's statements to her about being "bold," and about defendant's having "peed in my vulva." The failure to object to attempts to present inadmissible and prejudicial evidence can constitute ineffective assistance. *People v Ullah*, 216 Mich App 669, 685; 550 NW2d 568 (1996).

As discussed, defendant maintains that the SANE's testimony about how the complainant described defendant's actions came under MRE 803A, and was therefore rendered inadmissible once the complainant's mother provided a similar account of what the complainant said. However, again, the SANE's testimony duplicating the complainant's mother's testimony that the complainant told her that "[defendant] peed in my vulva" was properly admissible under MRE 803(4), as a statement necessary for medical diagnosis and treatment, thereby avoiding the limitation that MRE 803A places on such testimony. Further, as also discussed, the SANE's testimony quoting the complainant's boast that she was "brave" for disclosing abuse was not improper vouching because the SANE made no comment on the truthfulness of what the complainant said. Because the evidence defendant takes issue with was admissible, any objection by trial counsel would have been futile. See *Ericksen*, 288 Mich App at 201.

Defendant also argues that his trial counsel's performance was deficient for failing to object to the prosecuting attorney's closing remarks allegedly encouraging the jury to sympathize with the complainant by referring to her as "brave." As noted, the prosecuting attorney's remark was a part of summarizing the scientific evidence by accurately restating the SANE's quotation of the complainant's description of herself as "brave." This statement was in the context of proper argument, based on the SANE's examination and DNA evidence, that defendant was guilty as charged, and not a comment on the damage inflicted upon the child victim. Therefore, no objection would have been successful. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."

Defendant also argues that the cumulative effect of errors relating to the performance of his trial counsel denied him a fair trial. "The cumulative effect of several minor errors may warrant reversal even where the individual errors in the case would not warrant reversal." *People v Hill*,

257 Mich App 126, 152; 667 NW2d 78 (2003). However, defendant has not exposed any errors related to the SANE's testimony or the prosecuting attorney's closing arguments. Therefore, defendant has not shown that he was denied a fair trial.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Colleen A. O'Brien
/s/ Matthew S. Ackerman